IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Eugene Dewayne Green, #275500, Petitioner,

v.

Warden of Lee Correctional Institution, Respondent.[1]

Civil Action No.8:08-713-GRA-BHH

**REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

The petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code, Section 2254. This matter is before the Court on the respondent's motion for summary judgment. (Dkt. # 25.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The petitioner brought this habeas action on February 25, 2008.[2] On November 3, 2008, the respondent moved for summary judgment. By order filed November 4, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On December 10, 2008, the petitioner filed a response opposing the respondent's summary judgment motion.

---

[1]The petitioner is currently incarcerated at the Lieber Correctional Institution. (Dkt. # 20.) Therefore, the Warden at Leiber Correctional Institution should be substituted as the proper respondent.

[2]This date reflects that the petition was date stamped as received on February 25, 2008, at the Lee Correction Institution mailroom. (Pet. Attach.) *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

# I. PROCEDURAL HISTORY

The petitioner is currently incarcerated in Lieber Correctional Institution. (Dkt. # 20.) In January 2001, the petitioner was indicted for murder, kidnapping, and possession of a weapon during a violent crime. (App. 327-328.) Public Defender Harry Devoe represented the petitioner at a jury trial which was held May 22-24, 2001, with the Honorable Kenneth Goode presiding. The jury convicted the petitioner of murder and kidnapping, but returned a not guilty verdict on the possession of a weapon charge. (App. 376.) Judge Goode sentenced the petitioner to thirty-seven years for the murder and thirty years for the kidnapping to run concurrently. (App. 378). The petitioner filed a direct appeal.

Assistant Appellate Defender Robert M. Dudek represented the petitioner on appeal. On July 26, 2002, Dudek filed a brief in the South Carolina Court of Appeals, raising the following issues:

> 1. Whether the court erred by refusing to give a “mere presence” instruction where appellant told the police in his statements, and testified, that he was merely present when co-defendant Nichols shot the decedent, where appellant also said he begged Nichols not to shoot the defendant, where appellant stated he did not know what Nichols was going to do, and where the solicitor admitted he did not know who shot the victim, since a “mere presence at the scene” instruction was required by the evidence?
>
> 2. Whether the court erred in allowing appellant to be impeached with his prior armed robbery conviction since its probative value was outweighed by its prejudicial effect, and the court failed to articulate any reason why it concluded the probative value of this prior crime outweighed its prejudicial effect?

(Return Attach. # 6.) On July 8, 2003, the South Carolina Court of Appeals affirmed the petitioner’s convictions in an unpublished opinion, *State v. Green,* 2003-UP-462 (S.C. Ct. App. 2003). On August 22, 2003, the petitioner filed a petition for rehearing which was

denied on September 18, 2003. On October 20, 2003, the petitioner petitioned the Supreme Court of South Carolina for certiorari review raising the following issues:

> 1. Whether the Court of Appeals erred by holding that a prior conviction involving dishonesty or a false statement was automatically admissible under Rule 609 (a)(2), SCRE, without a Rule 403 SCRE, prejudice versus probative value analysis, since a Rule 403, SCRE analysis is still required as evidenced by this Court's opinion in State v. Tommy Lee James?
>
> 2. Whether the Court of Appeals erred by holding there was no evidence entitling petitioner to a "mere presence" instruction on the murder charge where petitioner told the police in his statements, and he testified, that he was merely present when co-defendant Nichols shot the decedent, where petitioner also said he begged Nichols not to shoot the decedent, where petitioner stated he did not know what Nichols was going to do, since a "mere presence at the scene" instruction was required by the evidence?

(Return Attach. # 15.) On October 21, 2004, the South Carolina Supreme Court denied the petition. The remittitur was sent down on October 26, 2004.

On March 4, 2005, the petitioner filed an application for post-conviction relief ("PCR"), raising the following claims for relief:

> (a) Ineffective Assistance of Counsel;
>
> (b) Lack of Subject Matter Jurisdiction;
>
> (c) Failure to Properly Allege or Prove a Conspiracy or Accessory Theory;
>
> (d) Improper Opening by State and Introduction of Evidence;
>
> (e) Trial Judge Erred in Admitting Photographs;
>
> (f) Prosecutorial Misconduct - Improper Comments and Attacking Character of Applicant;
>
> (g) Mere Presence Instruction.

(App. 259). On April 6, 2006, an evidentiary hearing was held before the Honorable Howard P. King. On April 10, 2006, the PCR judge informed the parties of his decision to

deny the application for relief. The PCR judge issued a written order of dismissal on May 4, 2006. (App. 321-326). The petitioner appealed the denial of relief.

Appellate Defender Wanda H. Carter represented the petitioner on appeal. On February 16, 2007, Carter filed a *Johnson* petition for writ of certiorari in the Supreme Court of South Carolina raising the following issue: Counsel erred in failing to object to the picture of the victim referred to by the solicitor during opening arguments. (Return Attach. #20 - *Johnson* Cert. Pet. at 2). On February 20, 2007, the state court informed petitioner of his right to file a pro se response. On January 10, 2008, the South Carolina Supreme Court denied the petition, and on January 28, 2008, the remittitur was sent down

In this original habeas petitioner, the petitioner raised only general claims regarding trial counsel. (Pet. 1). However, in the amendment filed July 2, 2008, (Dkt. # 15- Am. Pet.), the petitioner raised the following particular claims for relief:

> 1. Counsel was ineffective for failing to object to a picture of the victim used by he solicitor to elicit sympathy from the jury during opening argument;
>
> 2. Counsel was ineffective for failing to object to the solicitor's crossexamination of defense witness Harold James about Petitioner's "outlaw" tattoo because this testimony was used to impugn Petitioner's character;
>
> 3. Counsel was ineffective for allowing law enforcement officer to testify that he knew Petitioner from "prior run-ins" because testimony improperly placed Petitioner's character in evidence;
>
> 4. Counsel was ineffective for failing to object to solicitor's closing argument wherein he characterized Petitioner as one of two "criminals" and stated acts were those that a bunch of young "criminals" make;
>
> 5. Counsel was ineffective for failing to subpoena witness whose testimony he felt was "important" to the defense;
>
> 6. Counsel was ineffective for failing to object to solicitor's numerous references of prior bad acts by Petitioner;

> 7. Counsel was ineffective for allowing solicitor to cross-examine Harold James about prior bad acts because testimony was used to impugn Petitioner's character.
>
> 8. Counsel was ineffective for failing to suppress map created by the solicitor to illustrate the route Petitioner took officers on to get back to the crime scene because it was exposed that Petitioner never took officers and ma was incorrect;
>
> 9. Counsel was ineffective for failing to object to portions of the solicitor's closing argument presented solely for the calculate purpose of arguing the sympathy and/or prejudice of the jury;
>
> 10. Counsel was ineffective for failing to object to portions of the solicitor's closing argument because such was for no other purpose than to attack Petitioner's character;
>
> 11. Trial court erred by allowing Petitioner to be impeached with his prior armed robbery conviction since its probative value was outweighed by its prejudicial effect, and the court failed to articulate any reason why it concluded the probative value of this prior crime outweighed its prejudicial effect;
>
> 12. Trial court erred by refusing to give a "mere presence" instruction where Petitioner told the police in his statements, and testified, that he was merely present when co-defendant Nichols shot the decedent, where Petitioner stated he did not know what Nichols was going to do, and where the solicitor admitted he did not know who shot the victim, since a "mere presence at the scene" instruction was required by the evidence.

(Dkt. # 15 - Am. Pet.)

## II. FACTS

The South Carolina Court of Appeals on direct appeal summarized the facts of this case as follows:

> In September 2000, Green and Gibreel Nichols began preparations to travel from Manning to Miami, Florida. They intended to visit Green's family in Miami.
>
> Before departing for Miami, the two men traveled to Sumter in Nichol's car to get some money and sell some drugs. While riding around Sumter they passed a car driven by Dante Walker. They attempted to follow Walker but were unsuccessful.

Shortly afterward, Green and Nichols noticed Walker's car parked outside of a barbershop in Sumter. When Walker left the babershop, he was intercepted at gunpoint and forced into his own car. At trial, Green and Nichols gave differing accounts of the babershop encounter. Nichols testified he did not know Walker and that it was Green who stopped Walker as he was leaving the babershop.

Green, on the other hand, testified Nichols assaulted Walker at the babershop and forced Walker into Walker's own car. Nichols then drove Walker's car across the parking lot to where Green was waiting in Nichols' car. Green got in the backseat of Walker's car at Nichols' prompt.

Nichols drove Walker and Green in Walker's car back to Manning from Sumter. Their route took them down Highway 521 to Interstate 95 and then onto Highway 261. From there, they headed east toward Silver and turned down a couple of dirt roads, finally ending up at a secluded spot in the woods. After exiting the car, Walker was forced to walk into the woods where he was shot to death.

Green initially told police he waited in Walker's car while Nichols marched Walker into the woods and did not know Walker had been shot until Nichols told him so while they were on the way to Miami. However, Green later told police he walked into the woods with Nichols and Walker but that he was heading back to the car when he heard a gunshot. Green turned around and saw Walker on the ground. Green stated he closed Walker's eyelids and laid a pillowcase over his face.

Green and Nichols then drove Walker's car to Alcolu where they removed the rims, tires, radio, speakers, jack, spare tire, and cleaning supplied from Walker's car, and put the rims and tires on Green's Cadillac. The pair then again embarked for Miami, but only made it as far as Holly Hill before on of the front tires came off. They retrieved the tire and placed it back on the car, but after the same tire blew out they decided to head back to Manning and put Green's tires back on his car before heading to Miami.

The police stopped the pair in Green's car the following morning as they were heading to Alcolu to change the tires. Police apprehended Green and Nichols fled into the woods. Following his arrest, Green proceeded to give police five statements regarding his connection to Nichols and the murder of Walker. He first claimed to have only purchased tires and rims from Nichols, but his later statements detailed a more involved relationship with the events surrounding Walker's death.

(Return Attach. # 14 at 2-3.)

## III. APPLICABLE LAW

### A. Summary Judgment Standard

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position

is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**B. Habeas Standard of Review**

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

## C. Exhaustion and Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

I. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (I) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

ii. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from

raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

iii. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue,

he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

iv. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

## IV. DISCUSSION

### A. Procedurally Barred Claims

The respondent contends that the claims the petitioner raises in Grounds Two, Three, Four, Five, Six, Seven, and Eight are procedurally barred. The undersigned agrees.

In Ground Two, the petitioner alleges trial counsel was ineffective for failing to object to the solicitor's questions about an "Outlaw" tattoo which the petitioner has on his arm. In Ground Three, the petitioner alleges trial counsel was ineffective for failing to object to the a police officer's testimony regarding prior "run ins" with the petitioner. In Ground Four, the petitioner alleges trial counsel was ineffective for failing to object to the solicitor's closing argument characterizing the petitioner as a criminal. In Ground Five, the petitioner alleges trial counsel was ineffective for failing to subpoena witnesses important to his defense. The PCR judge did not address these issues in his order denying the petitioner's PCR application. Further, the petitioner did not file a Rule 59 motion and request a ruling on those issues. *Al-Shabazz v. State,* 527 S.E.2d 742, 747 (S.C. 2000)(holding "party must timely file a Rule 59(e), SCRCP, motion to preserve for review any issues not ruled upon by the court in its order.") Because the PCR judge did not address these issues in his order of dismissal, the South Carolina Supreme Court would not have been able to review these issues. *McCullough v. State*, 464 S.E.2d 340, 341 (S.C.1995); *Pruitt v. State,* 423 S.E.2d 127, n. 2 (S.C. 1992)(holding issue must be raised to and ruled on by the PCR judge in order to be preserved for review). Accordingly, these issues are barred from habeas review. *Coleman v. Thompson,* 501 U.S. 722 (1991).

In Ground Six, the petitioner alleges trial counsel was ineffective for failing to object to numerous references to prior bad acts. As the respondent argues, this claim is merely rehashing the claims raised in Grounds Two and Four. Thus, for the same reasons, this claim is similarly procedurally barred.

In Ground Seven, the petitioner alleges trial counsel was ineffective for allowing the solicitor to question Harold James about prior bad acts. In Ground Eight, the petitioner

alleges trial counsel was ineffective for failing to suppress a map. The petitioner did not raise these issues in his PCR proceeding and thus these issues are procedurally barred from habeas review. *Matthews, supra*..

When a state prisoner has defaulted his claims in state court, habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To the extent that the petitioner is claiming that his PCR counsel did not pursue these claims (Pet'r's Mem. Opp. Summ. J. Mot. 4-7), ineffective assistance of PCR counsel does not amount to an independent constitutional violation and is not therefore "cause" for a procedural default. *Murray v. Giarratano*, 492 U.S. 1-7, 13 (1989)(O'Connor, J., concurring). The petitioner has not argued any other ground to excuse the default and none is readily apparent on this record. Thus, these claims are barred from habeas review.

In *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. *See Karsten v. Kaiser Foundation Health Plan*, 36 F.3d 8, 11 (4th Cir. 1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations. Accordingly, the undersigned will not discuss the merits of the claims raised in Grounds Two, Three, Four, Five, Six, Seven, and Eight as these claims are procedurally barred.

**B. Merits**

**I. Ground One**

In Ground One, the petitioner alleges trial counsel was ineffective for failing to object to a photograph of the victim used by the solicitor in his opening statement.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United State Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." *Id.* at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. *Id.* at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in *Strickland,* defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell,* 506 U.S. 364 (1993). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland,* 466 U.S. at 689.

Trial counsel testified at the hearing that he objected to both the photograph and a map the solicitor referenced in his opening statement. (App. 302; 306; 308-309.) The PCR judge collectively discussed wether trial counsel was ineffective for failing to object to certain evidence and obtaining a jury instruction on mere presence. The PCR judge noted that trial counsel testified that he did object to the photograph, and then the PCR judge found these issues were a matter trial strategy and trial counsel was not ineffective. (App. 324.) Here, the trial record confirms trial counsel's testimony that he did object to the introduction of evidence, including pictures, during the solicitor's opening statement . (App.

59-61.) Thus, trial counsel was not deficient. Accordingly, this claim is without merit and should be dismissed.

**ii. Grounds Nine and Ten**

In Grounds Nine and Ten, the petitioner alleges trial counsel was ineffective for failing to object to portions of the solicitor's closing argument. As noted above, in order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *Strickland,* 466 U.S. 668 (1984). The petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing a habeas petitioner must come forward with some evidence that the claim might have merit). A petitioner bears the burden of affirmatively showing deficient performance. *Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). The presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). As these claims are unsupported by any factual allegations and are conclusory, they should be dismissed.

**iii. Ground Eleven**

In Ground Eleven, the petitioner alleges trial counsel was ineffective for allowing the petitioner to be impeached with a prior armed robbery conviction. This issue was raised to the South Carolina Court of Appeals on direct appeal in the context of a violation of state law, *Green v. State*, 527 S.E.2d 98 (S.C. Ct. App. 2000). The Court of Appeals decided the issue by applying state law. (App. 5-6.) "It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Burkett v. Angelone*, 208 F.3d 172, 186 (4th Cir.

2000)("[I]n considering federal habeas corpus issues involving state evidentiary rulings, 'we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding.'"). Accordingly, this claim is without merit and should be dismissed.

**iv. Ground Twelve**

In Ground Twelve, the petitioner alleges the trial court erred by refusing to instruct the jury on "mere presence." The petitioner asked for a jury instruction on mere presence (App. 374.) However, the trial court ruled that based upon the petitioner's statements and testimony, a mere presence charge was not appropriate. (*Id*.)

A federal court "exercises a limited role" when collaterally reviewing a state trial court's jury instructions, *Smith v. Bordenkircher*, 718 F.2d 1273, 1276 (4th Cir. 1983) , and "the inquiry is narrow." *Murphy v. Holland*, 776 F.2d 470, 476 (4th Cir. 1985). Because ordinarily "instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues," *Grundler v. North Carolina*, 283 F.2d 78-98, 802 (4th Cir. 1960), claims involving jury instructions are not cognizable on federal habeas review, unless the giving of the instruction violated a right guaranteed by the Fourteenth Amendment. *See Cupp v. Naughten,* 414 U.S. 141, 146-47 (1973). Further, the mere omission of a required jury instruction is less likely to be prejudicial than an erroneous instruction. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

The South Carolina Court of Appeals, held that there was ample evidence that the petitioner was more than merely present when the victim was murdered. (Ap. 5-6.) The Court noted that the petitioner and his co-conspirator, Nichols, planned to go to Miami together and had gone to Sumter to "hit on some people" for money and the petitioner was present when the victim was forced into his own car at gunpoint by Nichols. (*Id.*) The Court further noted that, in statements given to the police, the petitioner admitted that he knew

Nichols had a gun and yet the petitioner voluntarily got into the car with Nichols and the victim and rode with them to a remote location. (*Id.*) The Court stated that the petitioner then walked with Nichols and the victim, who had a pillowcase covering his head, into the woods where the victim was shot by Nichols. (*Id.*)

As the South Carolina Court of Appeals found, the record contains no evidence that the petitioner was a mere bystander, observing events solely by happenstance. The petitioner testified that he saw Nichols with a gun in a pillowcase approach the victim and hit him. (ROA 218-219; 275; 276.) He testified that he understood that the victim was being kidnapped at gunpoint, but he did not think the victim would be shot. (ROA. 248.) He testified that Nichols had a "gun on [the victim]" while they drove to the dirt road. (ROA. 281.) The record establishes that the petitioner was involved in unlawful activity with Nichols which led to the victim's death. Therefore, under the facts of this case, the petitioner was not entitled to a mere presence instruction. *State v. Hudgins,* 460 S.E.2d 388 (S.C. 1995), overruled on other grounds by *State v. Collins*, 495 S.E.2d 202 (S.C. 1998)(holding mere presence charge not warranted where appellant admitted stealing a truck and being involved in a series of unlawful acts which culminated in murder).[3]

---

[3]In *State v. Crowe*, the South Carolina Supreme Court set forth a jury charge for accomplice liability:

> [T]wo or more combine together to commit an unlawful act, such as robbery, and, in the execution of that criminal act, a homicide is committed by one of the actors, as a probable or natural consequence of the acts done in pursuance of the common design, all present participating in the unlawful undertaking are as guilty as the one who committed the fatal act.

188 S.E.2d 379, 382 (S.C. 1972). The Court further noted that "[t]he common purpose may not have been to kill and murder, but if it was unlawful, as, for instance, to break in and steal, and in the execution of this common purpose a homicide is committed by one, as a probable or natural consequence of the acts done in pursuance of the common design, then all present participating in the unlawful common design are as guilty as the slayer." (*Id.*)

Furthermore, in his petition, the petitioner merely asserts that the instruction should have been given. The petitioner does not allege, much less establish, that the failure to give the instruction rendered his trial fundamentally unfair.[4] The South Carolina Court of Appeals' decision was not contrary to, nor an unreasonable application of, federal law. Accordingly, this claim is without merit and should be dismissed.

**CONCLUSION**

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (# 25) be GRANTED and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

April 8, 2009
Greenville, South Carolina

**The petitioner's attention is directed to the important notice on the next page.**

[4]In fact, the undersigned notes that the petitioner did not even address this ground for relief in his memorandum opposing summary judgment. (Dkt. # 28.)

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).